## CALIXTE HARVIER v. GEORGE W. GUION.

A composition deed, executed by the plaintiff and other creditors of the defendant, contained a covenant to accept fifty per cent. of the defendant's indebtedness, in three installments payable in about six, twelve, and eighteen months, and that such payments should be in full satisfaction and discharge of all claims; but a condition was annexed, requiring that three-fourths, in amount, of the creditors, should sign the deed, without any limitation, however, as to the time within which the signatures must be procured. To this was added a covenant, by the plaintiff, that if the defendant paid the installments as they respectively became due, he would not prosecute the defendant for the debt until the expiration of the term limited for the payments, and that until then the instrument should operate as an absolute discharge of all suits commenced or which might be commenced against him. *Held,* that the defendant had the full period thus limited, within which to obtain the signatures of three-fourths of his creditors, and that the instrument was a good defence to an action brought by the plaintiff within the stipulated time, if the instalments were paid as they became payable by the terms of the composition deed.

ACTION for a money demand. The defence was founded on a composition deed, executed by the plaintiff and other creditors of the defendant, whereby, after reciting. that the defendant was unable to meet his obligations in full, and had offered to secure fifty cents on every dollar thereof, it was agreed in substance as follows: That in case the defendant should pay 15 per cent. of his indebtedness by the 16th of August, 1852, 20 per cent. by the 15th of February, 1853, and 15 per cent. by the 15th of August, 1853; then the parties signing would accept such payments in full of their respective demands, and when the payments should be all made, would seal and execute to the defendant general releases of all claims "from the beginning of the world" to the date of the instrument.

It was expressly provided, that the deed should be void, first, in case the debtor should neglect to make all or any of the several payments at the times limited and appointed therefor; secondly, unless three-fourths of the non-preferred creditors of the debtor, in amount, should execute the instrument; and thirdly, if certain preferred creditors should refuse to permit the payment of the fifty per cent. above referred to, before

Harvier *v.* Guion.

receiving their debts in full under the provisions of an assignment which had been executed by the debtor.

The deed concluded with a covenant, on the part of the creditors becoming parties thereto, that they would not, "during the time or term hereby granted for payment of said several sums, on the days appointed for payment thereof as aforesaid, or until a breach or failure of payment thereof, or of some part thereof in manner aforesaid, arrest, sue, attach, implead, or otherwise trouble the said Guion, his goods or chattels, but shall and will permit him to go free for and until the term thereby granted for payment of the said several sums, on the days appointed for payment thereof, or for and until breach or failure of payment, or for some part thereof in manner aforesaid.

"And we do hereby agree, that these presents shall be a free and absolute discharge from all actions and suits already commenced, or to be commenced, during the time or term aforesaid."

No time was prescribed, within which the signatures of three-fourths of the defendant's creditors were to be obtained.

The deed was dated January 7, 1852. When the first installment became due, in August, 1852, it was tendered to and refused by the plaintiff, who commenced this action on the 7th of February, 1853, before the second installment was payable.

Several questions were raised and much evidence adduced, on the trial, but the Marine Court gave judgment in the plaintiff's favor for the amount claimed, $250 and costs, on the ground that three-fourths of the non-preferred creditors had not signed the composition deed, and that the same was, therefore, inoperative. The defendant appealed to this court, where the cause was argued orally, on a printed return.

*Edward Hoffman* and *John Anthon*, for the appellant, made and argued the following points:

I. On the 7th January, 1852, the respondent executed a composition deed and letter of license, which he agreed to receive

in full of his demand against the appellant, 50 cents in the dollar, payable by installments in 18 months, and that he would not molest him within that time under penalty of forfeiture, unless in default, etc.

II. When the first installment fell due, in August, 1852, it was tendered to the respondent, who refused to receive it, and thereupon sued the appellant for his whole demand. The agreement is a flat bar to this suit, and ought to have been so adjudged.

III. This suit was brought and judgment rendered because three-fourths of the creditors had not then signed the deed. There is no time limited in the deed for such assent, and its obvious interpretation is that the debtor was to have the whole term to procure an assent. Any other interpretation would be absurd, and would give the creditor the right to sue immediately after he had signed the instrument, making the instrument *quasi felo de se.*

IV. This interpretation securing the delay of 18 months, does the creditor no injury, he being entitled to the whole debt, if at the end of the term of 18 months three-fourths have not then signed. The installments are in that event to be credited as part payment of the debt and not in full.

V. The composition deed and letter of license are instruments favored in the law, and are interpreted according to their true spirit. (Forsyth on Comp. Deeds, pp. 2, 28, 58.)

VI. The spirit of this deed is, 1. That the debtor shall have 18 months to raise and pay the reduced sum by installments. 2. That while laboring to pay such installments, he shall not be molested by his creditors, unless he make default on the specified days. 3. That the creditor is not bound to discharge him though he punctually pay the installments, unless when the last is paid it shall appear that three-fourths of the creditors have come into the measure. 4. That any proceedings of the creditor in violation of the agreement shall work a forfeiture of his demand.

VII. This action was therefore premature, and a violation of good faith towards the other creditors who had executed the

intrument, supposing even that three-fourths had not then signed.

VIII. Independently of these conclusions of the law from the proper interpretation of the contract, the judgment was against the evidence, for three-fourths had signed, and there was sufficient *primâ facie* evidence of that fact, and the onus was on the plaintiff below. (Forsyth on Comp. Deeds, p. 58.)

IX. All the conditions of the instrument, to be performed and kept by the defendant below to secure the composition, were faithfully kept by him. 1. The punctual payment of the installments. 2. The acquiescence by G. & D. Guion, in prior payment of the compromised debts. The judgment is against law and also against evidence, and ought to be reversed.

*George W. Cook* and *John Cook,* for the respondent, made and argued the following points.

The judgment of the court below must be affirmed on the following grounds:

I. The assignment, as shown to the various creditors, distinctly determines the respective amounts and persons who were the preferred creditors of Guion, and forms a total of $5,998 66.

II. The second instrument, or enlargement of Isaac Guion's preferred debt under the first assignment, as executed by Daniel Guion, as assignee, and George W. Guion, was a direct fraud upon the estate, George W. Guion having by the first assignment passed all his estate and interest therein to Daniel Guion, his assignee, to fulfill the trusts therein, had lost all power to change or vary the same in any respect, and Daniel Guion was, by agreeing to this course, acting in fraud against all the creditors' rights.

III. By the terms of the compromise, deed at folio 47, it expressly says that the same shall be void as to all the creditors of Guion signing the same, unless three conditions, as therein agreed on the part of this estate, should be complied with, the

breach of any one of which makes the same void and of no effect; and that not one of those terms have been complied with, by the proofs, and is, therefore, no bar to the plaintiff; besides which, the deed is without any consideration, and without the preferred creditors or assignee being parties or assenting thereto, and without any guaranty, promise or surety for the payment of the installments by any person, and is, on its face, a *nudum pactum*, and void for that reason.

IV. If not, the breaches in this deed are shown, by the testimony, to be: 1. That three-fourths of the non-preferred creditors, in amount, had not signed this deed before the day of payment named therein for the first installment of the composition. 2. That the two named preferred creditors took, and were paid, the amount of their preferred debts under the assignment before the three-fourths, in amount, of the creditors' debts signing this deed were fully paid, and were, in fact, paid before the day of payment fixed in said deed for the first installment, and there was a direct violation of the proviso therein in this respect. 3. That three-fourths, in amount, of all the non-preferred creditors of said Guion have not signed and executed the composition deed, as shown by the proofs.     *     *

| | | |
|---|---|---|
| Daniel Guion, | $3,268 74 | |
| Isaac Guion, | 4,716 34 | |
| Jane Vaughon, | 313 58 | |
| Luther Elting, | 600 00 | |
| John Brower, | 1,018 08 | 9,916 74 |

Upon the happening of any one of the above breaches, the composition deed formed no bar to any suit brought by any creditor who might have signed the same, subject to a compliance with each proviso contained therein, and then, not being three-fourths of the non-preferred creditors signing the composition deed, it is void, and is also void by first paying Isaac Guion and Daniel Guion.

V. There is no sufficient evidence in the case to prove many of the signatures to the composition deed as creditors of Guion.

VI. Under the most favorable circumstances to the appellant, the clear amount signed off is only $9,634 18.

By THE COURT. WOODRUFF, J.—It was not only not shown by the defendant that three-fourths of his non-preferred creditors had signed the compromise or composition deed upon which he relied as a defence to the plaintiff's action, but his own witness, Negus, proves distinctly that three-fourths in amount had not signed at the time of the trial. Whoever, then, had the burthen of showing that the condition had or had not been complied with, the fact was proved, and that is sufficient, if the non-compliance with the condition down to the time of the trial rendered the composition deed inoperative.

The agreement was dated January 7th, 1852, and provided in substance that the plaintiff would accept fifty cents on the dollar, by three installments—the first payable on or before the 16th August, 1852 ; the second payable on or before the 15th February, 1853, and the third payable on or before the 15th August, 1853—with this condition annexed, "Provided that unless three-fourths of the non-preferred creditors of the said George W. Guion, in amount, execute these presents, they shall be void and of no effect."

This suit was commenced prior to the 7th of February, 1853, and the defendant proved that on the 16th August, 1852, he tendered to the plaintiff the first installment provided for, but the court below held the agreement inoperative because three-fourths of the creditors had not signed it. If the construction of the agreement depended solely upon the provisions above referred to, I should be inclined to think the decision correct.

The condition in relation to procuring the signatures of the other creditors is entirely silent regarding the time within which it must be done, and its construction in this respect is therefore to be gathered from the whole instrument together, if, upon an examination of its various provisions, the intent of the parties can be reasonably inferred.

There were over one hundred and fifty creditors. Some time to procure the signatures of three-fourths was necessarily con-

templated. The very insertion of the proviso shows that the execution by all who signed was not to be simultaneous, and if not, some time must be allowed to enable the defendant to reach creditors who resided in New York, Vermont, Connecticut, Rhode Island, and, it may be, other states, and one firm in England. Correspondence, if not journeys, might be necessary to the conclusion of the whole arrangement.

It would be little less than absurd to say that the plaintiff might sign the composition deed on one day and on the next day declare it void, and bring his action because the whole number of signatures had not been obtained within twenty-four hours.

But, as above intimated, if there were nothing more in the deed than is above stated, I should be inclined to say that the proper construction of the condition was, that before the signers were called upon to do anything further or change their relation to the defendant in any respect, even by accepting an installment of the fifty per cent., he should perform the condition in question, *i. e.* whenever after the signing by the plaintiff, the defendant came forward to perform the agreement on his part and called upon the plaintiff to do any act recognizing the existence of the deed as a valid operative instrument, he must be prepared to show, or at least it must be true, that the condition upon which it was to be operative and valid had been complied with.

But the covenant with which this deed of composition concludes shows, to my mind, that this was not what the parties intended, and on the contrary, that by the proper construction of the whole deed the defendant had until August, 1853, to comply with the conditions.

The creditors respectively covenant that they will not arrest, sue, implead or molest the defendant during the term granted for making the payments, *i. e.* until August 15, 1853, until or unless he should fail to make the payments stipulated, and that these presents shall be a free and absolute discharge from all actions and suits already commenced or to be commenced during the time or term aforesaid, *i. e.* unless and until a breach or failure in making the payments should happen.

It will be seen, then, that if he paid the installments as they became due, the covenant not to sue was absolute in its terms, and the instrument was declared to be a full discharge of all suits brought in the meantime, and full effect is given to every part of the instrument by adding: If, besides making such payments, the defendant also procured the signatures of three-fourths of his creditors, then the instrument was to operate as a final discharge and release.

Entertaining this view of the construction of the agreement or composition deed, I think that when the suit was commenced the conditions of the deed had not been broken, and that it was and ought to have been held a sufficient protection to the defendant.

Judgment reversed.